IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Jennifer Braun, being first duly sworn, hereby depose and state as follows:

## BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since 2020. I am currently assigned to the Minneapolis Field Office, Grand Forks Resident Agency in North Dakota. I am primarily responsible for investigating violent crime within the boundaries of the Spirit Lake Reservation, as well as other federal violations throughout the state of North Dakota.

2. I make this affidavit in support of a criminal complaint charging Cassandra Santos ("SANTOS"), DOB: XX/XX/1989 – and also known as Cassandra Lynn Santos, Cassandra Rhondalynn Santos, Cassandra R L Santos, Cassandra Rhonda Lynn Santos, and Cassie Santos – with violations of Title, United States Code, Sections 13, 1153, and 113(a)(7) and North Dakota Century Code, Sections 14-09-22.1(1) and 12.1-32-01("SUBJECT OFFENSES"), as indicated in Attachment A.

3. Title 18, United States Code, § 1153 (Offenses committed within Indian country), provides federal jurisdiction over an Indian who commits offenses against another Indian or other person in Indian country. The enumerated offenses include a felony assault under section 113 and felony child abuse or neglect.

4. Title 18, United States Code, Section §113(a)(7), provides assault resulting in substantial bodily injury to a spouse or intimate partner, a dating partner, or an individual who has not attained the age of 16 years, is a felony punishable by a fine under this title or imprisonment for not more than 5 years, or both.

5. North Dakota Century Code Section 14-09-22.1 and 12.1-32-01 provides a parent, adult family or household member, guardian, or other custodian of any child, who willfully fails to provide proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals commits felony child neglect punishable by a maximum penalty of five years imprisonment and a fine of ten thousand dollars.

6. The statements contained in this affidavit are based on: information provided by other agencies; reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; information gathered from physical searches conducted by law enforcement agents and officers; independent investigation; and my experience, training, and background as a Special Agent with the FBI. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each fact known to me concerning this investigation. I have set forth the facts I believe are necessary to establish probable cause to show that SANTOS committed the SUBJECT OFFENSES.

## PROBABLE CAUSE

### July 6, 2026 Crow Hill Recreation Center Incident

7. On July 6, 2026, BIA Special Agent Derek Wilkie ("SA Wilkie") called informed me that an infant had reportedly been run over by SANTOS at the Crow Hill Recreation Center ("Rec Center"), which I know to be within the boundaries of the Spirit Lake Reservation[1], during a prayer service. SA Wilkie called again and said the infant, born in 2025, ("Child 1") would be transported to a hospital in Fargo due to injuries and that SANTOS had left the scene and drove to her home in Oberon.

8. SA Wilkie went to SANTOS' home to interview her. I listened to SA Wilkie's interview recording. In the recording, SANTOS said she did not intentionally hit Child 1. SANTOS stated her two kids (Child 2 and Child 3) and others were with her at the time. SANTOS provided inconsistent and contradicting information about alcohol consumption. She said did not have any alcohol, she might have been drinking earlier, she took a couple shots and was drinking 99 Apples, and she took her last shot probably three or four hours before the interview. Then SANTOS said she didn't start drinking until after she got home, and she was sober when she was at the event. SANTOS stated after she hit Child 1, she picked up Child 1 to check on Child 1. SANTOS reiterated that it was not intentional and she wished someone had been watching Child 1.

---

[1] I verified this information with a BIA Realty Specialist.

9. I responded to the scene and later conducted several interviews of Child 1's relatives. The grandmother and aunt of Child 1 told me they believed SANTOS had been drinking and smelled alcohol on SANTOS. The former said she saw SANTOS with a bottle of 99 Apples and the latter did not know what she was drinking.

10. Child 1's grandmother said SANTOS was driving a vehicle and should have known there were kids in the area but was not paying attention. Child 1 walked out of the Rec Center and her grandmother thought SANTOS saw Child 1 but SANTOS hit Child 1 with the front end of the vehicle and the back end of the vehicle ran over Child 1's legs. Child 1 started screaming and SANTOS got out of the car and said "[Child 1 is] okay," and started moving Child 1's legs.

11. In a later interview, on August 27, 2026, Child 1's aunt said she was in the back of the vehicle driven by SANTOS. Several others were also in the vehicle, including SANTOS' child, born in 2022 ("Child 2"). She observed SANTOS backing out of her parking space at the Rec Center slowly but SANTOS was not paying attention as she was talking to another passenger. She didn't know SANTOS had been drinking until after the incident and didn't get close enough to her to smell alcohol but when she later picked up Child 1, SANTOS was slurring her speech. She believed that SANTOS had been drinking 99 Apples that day and the vehicle smelled like liquor. There was no alcohol in the car, only empty bottles.

12. I interviewed Child 1's mother on July 28, 2026, and she said she was inside the Rec Center serving food during the prayer service. She saw SANTOS drinking and walking around like it was a party. She told SANTOS she should not be drinking with all of the nieces and nephews around but SANTOS told her a pint did not get her drunk anymore and she did this all the time. About a half an hour to 45 minutes later, SANTOS ran over Child 1. She went outside and saw Child 1 crying in pain and Child 1's legs were dangling. SANTOS was saying that nothing was wrong with Child 1 and Child 1 would be ok. SANTOS had been driving and had an empty purple 99s pint in the door and she saw a green 99s bottle in her hand when she was standing by the vehicle. Child 1's mother put Child 1 in her vehicle and drove Child 1 to the Spirit Lake Emergency Medical Services Ambulance Bay.

13. Several children who witnessed SANTOS hit and run over Child 1 with the car were forensically interviewed and a summary of those interviews is as follows:

a. Witness, born in 2019, said SANTOS was drinking a lot and saw SANTOS with a bottle outside and bottles in her car. SANTOS was driving and two of SANTOS children, Child 2 and Child 3, were in the car.

b. Witness, born in 2011, saw SANTOS with a bottle of 99s in her hand and saw her dancing in the car and drinking. The witness thought SANTOS was talking to someone and not looking at the road. The witness thought SANTOS' own kids (Child 2 and Child 3) were also in the car.

c. Witness, born in 2009, said SANTOS was drinking and driving when she ran over Child 1. SANTOS was by the vehicle with a drink her hand. After SANTOS ran Child 1 over, SANTOS grabbed Child 1's legs, wiggled them, and said Child 1 did not have broken legs.

14. I obtained and reviewed medical records which indicated Child 1 was first admitted to Mercy Hospital in Devils Lake and then transported by air to Sanford Health in Fargo. Child 1 was diagnosed with a closed fracture of the right femur, crush injury, and trauma. Child 1 also had abrasions to the left thigh, left calf, and left foot.

**August 7, 2026 Incident**

15. On August 7, 2026, BIA Patrol Officer Jerard Hoeger ("Officer Hoeger") responded to report of a child who was found walking on the side of the road[2]. I reviewed Officer Hoeger's body-worn camera ("BWC") footage regarding the incident and learned the following:

a. Child 3 was walking on the side of the road when Kenny Longie saw Child 3. Longie told Officer Hoeger he asked the Child 3 if Child 3's parents left him and Child 3 said "yeah."

b. Child 3 was wearing a t-shirt and shorts but no shoes.

c. Child 3 said Child 3's mom, SANTOS, brought him to his cousin's house[3] last night and said she would be back but she did not come back and Child 3 was trying to go home.

16. Child 3 told a Spirit Lake Social Services employee that Child 3 did not know where SANTOS was and that she dropped him off with a babysitter and never came back. Child 3 said Child 3 did not know the person with whom SANTOS dropped him off and Child 3 did not want to stay there anymore. The social worker attempted to locate SANTOS and found her in Fort Totten housing outside of a vehicle with others, SANTOS and the others all appeared to be under the influence. SANTOS insisted her children were all safe at different houses.

[2] I have not yet received documentation from the BIA on the exact location where Child 3 was found but believe, based upon the fact that BIA police responded and from my general understanding of and experience with the area, it is within the boundaries of the Spirit Lake Reservation.

[3] Child 3 showed the Spirit Lake Social Services employee this residence. Based upon my experience, this is within the boundaries of the Spirit Lake Reservation.

17. I interviewed Child 1's mother who said Child 3 was found on the dump ground road – hungry and without shoes. She asked Child 3 where Child 3 was trying to go and he said he was going to walk to the police station and ask them to take him home. She had a video of SANTOS from that morning, which she provided me. SANTOS pulled up to her house in a vehicle when social services was there and started yelling, "Just give me my fucking kids back." She described SANTOS as "so intoxicated" and said she could tell by the way her voice sounded.

**September 11, 2026 Incident**

18. On September 11, 2026, the FBI attempted to forensically interview Child 2 and Child 3 at their school, however, school staff informed me that the children had been called out of school sick.

19. Later that day, I heard a call over the radio regarding SANTOS. I went to the Fort Totten Police Department for further information. I learned that SANTOS had been arrested on Spirit Lake Tribal charges following an incident.

20. I reviewed BIA Police Officer Shawn Cottingham's report and learned the following:

a. Dispatch notified Officer Cottingham of a request for a police officer to locate a female driving a Chevy Tahoe, that the female might be intoxicated, and the female might have her children in the car.

b. Officer Cottingham found the Chevy Tahoe at 309 Baptist Church Road[4] and observed two children outside and no adults. The children said their mother was taking a nap in the Chevy Tahoe. Officer Cottingham observed a female, who identified herself as SANTOS, curled up on the passenger side floor of the Tahoe. Officer Cottingham attempted to speak with her but she was uncooperative. Officer Cottingham found the vehicle's keys under the passenger seat and saw an empty bottle of 99s and an empty can of Steele Reserve.

c. Officer Cottingham noted that SANTOS urinated on herself at the scene and then urinated in the back of his police vehicle.

21. I reviewed Officer Cottingham's body worn camera footage from the encounter and noted the two children outside the Chevy Tahoe were Child 2 and Child 3.

22. I also noted in the body worn camera footage that SANTOS took a breath test but the corrections officer states it was a partial result. On the radio Officer Cottingham describes the partial result as 0.196 blood alcohol concentration.

23. In a forensic interview on September 24, 2026, Child 3 provided the following information:

a. SANTOS is Child 3's mom.

b. Sometimes SANTOS drank every day.

---

[4] I confirmed with BIA Realty that this residence is located within the boundaries of the Spirit Lake Reservation.

c. Child 2 and Child 3 were playing outside the house and SANTOS was taking a nap in her car. The cops found SANTOS in her car. SANTOS was drunk and drove there and Child 3 knew she was drunk because Child 3 saw the 99s in the back seat. SANTOS was trying to leave Child 2 and Child 3.

d. Child 3 knew SANTOS had been driving and accidentally ran over Child 1's leg. Child 3 saw SANTOS drinking 99 bottles that day. SANTOS was drinking it in the kitchen by the gym.

24. Spirit Lake Tribal Enrollment informed me Child 1 was not enrolled but Child 1's mother informed me Child 1 is eligible for enrollment and she wants to enroll Child 1 but needs Child 1's father to sign the documents.

25. I contacted Spirit Lake Tribal Enrollment regarding Child 2 and Child 3's enrollment status. Tribal Enrollment informed me that they were not enrolled members of the Spirit Lake Tribe, but were listed as descendants.

26. SANTOS has submitted herself to the jurisdiction of Spirit Lake Tribal Court. In her Tribal Court personal information sheet, SANTOS stated she is an enrolled member of the Little Shell Tribe. Child 1's mother confirmed this information. I am awaiting confirmation from Little Shell Tribal Enrollment regarding SANTOS' enrollment status.

## CONCLUSION

27. Based on the information detailed above, I respectfully submit there is probable cause to charge SANTOS with violations of Title, United States Code, Sections 13, 1153, and 113(a)(7) and North Dakota Century Code, Sections 14-09-22.1(1) and 12.1-32-01 ("SUBJECT OFFENSES"), as indicated in Attachment A.

Respectfully submitted,

Jennifer Braun
Special Agent
Federal Bureau of Investigation

Sworn to before me on the 9 Day of October 2026, [before me and signed in my presence] [by reliable electronic means].

Clare R. Hochhalter
United States Magistrate Judge